UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07CR57 CDP |
| | ) | (FRB) |
| MICHAEL S. JAMES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed a Motion to Suppress Evidence (Docket No. 19) and a Motion to Suppress Statements, Admissions and Answers (Docket No. 20), to which the government filed a Response (Docket No. 22). Testimony and evidence was adduced on the motions on July 6, 2007. Following the hearing the parties requested and were granted leave to file supplemental memoranda of law in support of their respective positions on the motions. Defendant filed his Post Hearing Memorandum In Support Of Motion To Suppress Evidence Obtained As A Result Of Search Or Seizure on July 11, 2007 (Docket No. 26) and the government filed its Reply To Defendant's Post-Hearing Memorandum on July 25, 2007 (Docket No. 30).[1] At the

---

[1]At the hearing government counsel requested until July 25, 2007, to file a response to defendant's post hearing brief in order to accommodate government counsel's previously scheduled vacation. Defendant did not oppose the request.

court's request a written transcript was prepared of the motion hearing. The transcript was filed with the court on July 12, 2007. The undersigned has relied on the written transcript in making the following findings of fact:

## Findings of Fact

On January 20, 2007, a woman called the Drury Inn hotel located in Fruitland, Missouri. She told an employee with whom she spoke that she was the sister of a man who was a registered guest at the Inn and wanted to know the number of the room in which he was staying. The employee explained to the woman that the information she was requesting could not be given out. The woman then asked to speak to the manager of the hotel. The manager was not on duty at the hotel at that time, however the employee provided the woman with a telephone number at which the manager could be reached. The woman then called the manager and explained that she was the sister of a man who was a guest at the hotel, that there was a warrant for his arrest and that she feared for his safety, and that she wanted the room number so that she could provide the information to the Sheriff's Office. The manager reiterated that the information could not be given out, but that if she called the Sheriff's Office and they came to the hotel, then the room number information would be given to the officers. The manager then proceeded to go to the hotel from her home.

On January 20, 2007, a woman called the Cape Girardeau County Sheriff's Office and reported that there was an outstanding arrest warrant for her brother Michael James, and that he was then staying at the Drury Inn, in Fruitland, Missouri.

A computer check was then made and it was determined that there was an outstanding warrant for the arrest of Michael S. James issued for parole violation. The check also showed that the underlying offense of conviction for which James was on parole was robbery. It was also reported that James was to be considered armed and dangerous.[2]

This information was reported to Cape Girardeau County Deputy Sheriff Todd Stevens, who then drove to the Drury Inn. Upon arrival he met with employees of the hotel who confirmed that Michael S. James was a registered guest at the hotel staying in Room 408. The employees also showed to Deputy Stevens a photocopy of the driver's license which James had provided upon check-in. The license bore the name Michael James and there were two photographs of James on the license.

After confirming that James was at the hotel Deputy Stevens called for backup and a short time later Cape Girardeau County Deputy Sheriff Aaron Fornkohl arrived at the hotel. Deputy Fornkohl was made aware of the circumstances. The two deputies

---

[2] See Government's Exhibit 1. "Mules" printout showing arrest warrant and information concerning defendant.

then went to Room 408. Deputy Stevens then knocked on the door, saying that he was a hotel employee and requested that the door be opened. The door was not opened. Several more requests were made but the door was not opened.

Deputy Stevens then announced that they were deputies with the Cape Girardeau County Sheriff's Office and were looking for Michael James. A man inside the room responded that he was not Michael James and that James was not in the room. After several requests the man inside the room refused to open the door.

The deputies then obtained a passkey to the room from the manager. They used the passkey to open the door to the room. The door opened several inches but would open no further because of a chain lock or hasp on the inside of the door. The officers continued to ask the man inside the room to open the door. They could see through the small opening that the man was standing behind the door. The occupant of the room continued to refuse to open the door, and then slammed the door shut. From the sound of the man's voice inside the room the deputies could tell that the man was moving away from the door further into the room. The deputies were concerned that the man inside the room might be arming himself so they then opened the door using the key and broke the chain lock on the door and went into the room with their weapons drawn.

When the deputies entered the room they saw a man standing in the hallway entrance to the room about six feet from them. Deputy Stevens recognized the man as the same person whose photo was on the Michael James driver's license that he had seen earlier. The man raised his hands up in the air and was ordered to get down on the floor. The deputies then took hold of James and forced him to the floor. James did not resist. Deputy Fornkohl then placed handcuffs on James. Deputy Stevens told James that he possessed a warrant for his arrest. Deputy Stevens then read to James the <u>Miranda</u> rights, and specifically that he had the right to remain silent; that anything he said could be used against him in court; that he had the right to speak to a lawyer and to have a lawyer present during questioning; and that if he could not afford a lawyer one would be appointed for him before questioning if he wished. James said that he understood these rights.[3] James then said that he was an informant and asked that "certain people" be contacted. Deputy Stevens said that could be done later.

Deputy Fornkohl noticed that there were two beds in the hotel room and that men's clothing was sitting on the bed farthest from the door to the room. The clothing was about ten to twelve

---

[3]Deputy Stevens could not recall if he asked the defendant if he understood these rights or if he wished to answer questions, although it was his practice to do so each time he arrests someone. Deputy Fornkohl testified that he did specifically recall Deputy Stevens asking James if he understood the rights and James replying that he did. The undersigned does find Deputy Fornkohl's testimony in this regard to be credible.

feet from where James was being held by Deputy Stevens. A duffel bag was on the bed closest to the door. Because it was cold outside at the time and because the man was wearing only boxer shorts Deputy Fornkohl was going to obtain the clothing so that James could get dressed for the ride to the Sheriff's Office. Deputy Fornkohl picked up a jacket and began to feel if there might be any weapons in the jacket. He felt a hard object in a jacket pocket that he believed to be a firearm. He then reached into the pocket and removed a handgun. Deputy Fornkohl alerted Deputy Stevens that he had found a gun in the jacket. Deputy Stevens asked James if he was "going for the gun" when the officers entered the room. James replied that he was, but that he "wasn't going to shoot it." Upon examination of the gun Deputy Fornkohl found it to be loaded with six rounds of ammunition. He continued to search the jacket and found and seized two bags of a white powdery substance, a syringe, and $120.00 in currency.

Deputy Fornkohl asked James if there were any other illegal items in the room and James replied that there were items in the duffel bag on the bed. Deputy Fornkohl then searched the duffel bag and found a zippered case containing two lighters, a condom, a copper colored scrub pad, a baggie with a white powder substance and a digital scale.[4]

---

[4] See Government's Exhibit 2. Photographs of items found and seized by Deputy Fornkohl.

James told the deputies that the powder found in the jacket was cocaine and that the powder found in the duffel bag was baking soda. Because the gun and other contraband had been found in the clothing the deputies were concerned that other yet undiscovered evidence or weapons might be hidden in the clothing and determined not to provide it to James at that time. James was taken from the hotel and transported to the Sheriff's Office wearing boxer shorts.

## Discussion

As grounds to suppress the items of evidence seized by the officers in this cause the defendant asserts that the items were "seized as a result of a search or other illegal intrusion in the Defendant's person, property, or other area in which he has a reasonable expectation of privacy, without a valid search warrant issued upon probable cause, nor pursuant to a lawful order or other legal justification."

The evidence adduced at the hearing shows that Deputy Stevens received information that there was a warrant of arrest outstanding for the arrest of the defendant and that the defendant could be found at the Drury Inn in Fruitland, Missouri. He then confirmed the existence of the warrant through a computer check and conducted further investigation which confirmed that the defendant was a registered guest in Room 408 at the Drury Inn.

Deputies Stevens and Fornkohl went to Room 408 and conversed with the occupant in an effort to have him open the door. The defendant refused and slammed the door shut after the deputies had partially opened the door.

A valid arrest warrant carries with it the authority to enter a dwelling in which the suspect lives if there is reason to believe that the person named in the warrant is then inside the dwelling. Payton v. New York, 445 U.S. 573, 603 (1980). Here, the deputies were aware of the existence of the parole violator's warrant and had ample reason to believe that James was then a resident of Room 408 at the Drury Inn and was then inside the room. Their entry into the room to arrest the defendant was therefore lawful. United States v. Risse, 83 F.3d 212, 216-17 (8th Cir. 1996).

Once inside the room Deputy Stevens apprehended and restrained the defendant and placed him under arrest on the outstanding warrant.

Inside the hotel room there were two beds situated next to each other. Clothing was sitting on the bed located furthest into the room. The clothing on the bed was approximately 10-12 feet from where the defendant was located when the officers entered the room. On the bed closest to the entrance to the room sat a duffel bag. Because the defendant was wearing only boxer shorts at the time of his arrest Deputy Fornkohl went to the clothing on the bed intending to permit the defendant to dress before leaving the

hotel for the station house.  For safety reasons he patted down a jacket which he had found on the bed.  When he did so he felt a hard object in the pocket which he believed to be a gun.  He then reached in the pocket and found and seized a fully loaded handgun.  A further search of the jacket revealed a syringe, two bags of a white powdery substance and currency.  After being told by James that there were other illegal items in the duffel bag Deputy Fornkohl seized and searched that bag.

In <u>Chimel v. California</u>, 395 U.S. 752 (1969) the Supreme Court held that law enforcement officers effecting the arrest of a person may lawfully conduct a search of that person and of the area within his immediate control without a warrant.  The court defined the area of immediate control to be the area from within which the arrestee might gain possession of a weapon or destructible evidence.  <u>Id.</u> at 763.  In <u>United States v. Morales</u>, 923 F.2d 621 (8th Cir. 1991) the Eighth Circuit noted that the phrase "immediate control" was not limited to areas that were conveniently or easily accessible to the arrestee.  <u>Id.</u> at 626.  In so doing the court cited the holding of the Supreme Court in <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981) that police could lawfully search an automobile in which the arrestee had been riding, including a jacket located in the vehicle, even though the arrestee was no longer in the vehicle.  "[A]ccessibility, as a practical matter, is not the benchmark" in determining the lawfulness of a search incident to arrest.  <u>United States v. Palumbo</u>, 735 F.2d 1095, 1097

(8th Cir.), cert. denied, 469 U.S. 934 (1984).

Here, the jacket on one bed and the duffel bag on the other bed were in the immediate control of the defendant. Had the defendant chosen to do so he could have readily reached either object before the deputies were able to apprehend and subdue him. The fortuitous fact that he chose not to do so does not affect the analysis of whether they were in his immediate control. "Chimel does not require the police to presume that an arrestee is wholly rational. Persons under arrest may attempt actions which are unlikely to succeed." United States v. McConney, 728 F.2d 1195, 1207 (9th Cir.), cert. denied, 469 U.S. 824 (1984). See also United States v. Robinson, 414 U.S. 218, 235 (1973).

Courts in numerous cases have upheld as valid searches incident to arrest the search of items located in motel rooms where defendants have been arrested. See United States v. Roper, 681 F.2d 1354, 1358-59 (11th Cir. 1982), cert. denied, 459 U.S. 1207(1983)(Search of containers located on dresser top and table in room where defendant arrested); United States v. Andersson, 813 F.2d 1450, 1455-56 (9th Cir. 1987)(Search of suitcases sitting on bed in room where defendant arrested); United states v. Bennett, 908 F.2d 189, 193-94 (7th Cir.), cert. denied, 498 U.S. 991 (1990)(Search of suitcase in room where defendants arrested); United States v. Miller, 946 F.2d 1344 (8th Cir. 1991), cert. denied, 503 U.S. 947 (1992)(Search of nightstand in room where defendant arrested); and United States v. Cotnam, 88 F.3d 487, 496

-10-

(7th Cir.), cert. denied, 519 U.S. 942 (1996)(Search of jacket laying on bed in room were defendant was arrested).

The areas in which the defendant's jacket and duffel bag were found were within his immediate control and the search of and seizure of the items from the jacket and duffel bag were lawful because made and done incident to the arrest of the defendant, and those items should not be suppressed.

As grounds to suppress the statements made by him to the detectives on January 20, 2007, the defendant asserts that he was not advised of his Miranda rights, that his statements were not voluntary, and that his statements were the product of the unlawful searches and seizures conducted by the deputies.

Evidence adduced at the hearing on defendant's motion showed that the defendant was advised of his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). After being so advised he then stated that he understood these rights and proceeded to answer questions put to him by the deputies. These circumstances demonstrate a knowing, intelligent and voluntary waiver by the defendant of these rights. United States v. Ingram, 839 F.2d 1327, 1329 (8th Cir. 1988). There is no evidence that the statements were made as a result of threats, promises or other coercion by the deputies and the statements were therefore lawful. Colorado v. Connelly, 479 U.S. 157 (1986). Further, the searches conducted by the deputies were lawful as discussed supra. The defendant's statements should not be suppressed.

## Conclusion

For all of the foregoing reasons the defendant's Motion to Suppress Evidence (Docket No. 19) and Motion to Suppress Statements, Admissions and Answers (Docket No. 20) should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the defendant's Motion to Suppress Evidence (Docket No. 19); and Motion to Suppress Statements, Admissions and Answers (Docket No. 20) be denied.

The parties are advised that they have to and including **September 10, 2007,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_____
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August, 2007.