UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:07CR00057 ERW (FRB) |
| | ) | |
| MICHAEL S. JAMES, | ) | |
| | ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of Magistrate Judge Frederick R. Buckles [doc. #31]. On October 1, 2007, Defendant Michael James timely filed objections to the Report and Recommendation [doc. #35]. The Report recommends that Defendant's Motion to Suppress Evidence [doc. #19] and Motion to Suppress Statements, Admissions and Answers [doc. #20] be denied.

## **I. LEGAL STANDARD**

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).[1] The district court has wide discretion to "accept, reject, or modify, in

---

[1]28 U.S.C. § 636(b)(1)(B) provides "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court. . .." The statute further provides that each party may file written objects within ten days of being served with a copy of the magistrate judge's report and recommendation. *Id*. at § 636(b)(1).

whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. DISCUSSION[2]

Defendant objects to the Magistrate Judge's finding that the search of Defendant's jacket was a lawful search incident to arrest. Defendant does not raise any objection to the Magistrate Judge's finding of facts, nor to the Magistrate Judge's denial of Defendant's Motion to Suppress Statements, Admissions and Answers; therefore the Court will not address those findings. The Court will review *de novo*, the Magistrate Judge's finding that the search of Defendant's jacket was a lawful search incident to arrest. The Court will also address the Government's alternate argument, that the search was lawful due to the need to provide the Defendant with clothing.[3]

### A. Search Incident to Arrest

The Supreme Court in *Chimel v. California*, held that a search of an individual incident to arrest is permissible, and further that arresting officers may search the area within the arrestee's immediate control, to protect the safety of the officers, and to prevent the destruction of evidence. 395 U.S. 752, 762-763 (1969).[4] The Supreme Court further stated that "[t]here is ample justification . . . for a search of the arrestee's person and the area 'within his immediate control'- construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id*. at 763. Following the Supreme Court's decision in *Chimel*, there

---

[2]The Magistrate Judge's Report and Recommendation contains a thorough recitation of the facts, and therefore the Court will not repeat them in detail. The Court will refer to specific factual findings, as applicable.

[3]This was not addressed in the Magistrate Judge's Report and Recommendation, however, it was raised in the parties original briefs.

[4]There is no dispute that the officers did not possess a warrant to search the motel room where the Defendant was residing. The Parties agree that in order for the search of the jacket to be lawful it must have been incident to arrest, or subject to some other exception.

2

has been an abundance of case law which has sought to further define the area within an arrestee's immediate control.

The Eighth Circuit in *U.S. v. Morales*, held that a duffle bag, which the arrestee had in his possession when he was arrested, was within the arrestee's immediate control. 923 F.2d 621, 626 (8th Cir. 1991). The Eighth Circuit specifically found "the phrase 'immediate control' to extend beyond the area that is conveniently or easily accessible to the arrestee." *Id.* The Eighth Circuit in *Morales* cites to *New York v. Belton*, as support for its holding. *Id.* ("In *Belton*, the Supreme Court held that a police officer who has lawfully arrested the occupant of an automobile may contemporaneously with that arrest, search the passenger compartment, even if the arrestee is no longer inside it."). The Eighth Circuit has broadly defined the language, "immediate control," holding that "[t]his rule defines the area generally which may be searched, and is not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area." *U.S. v. Palumbo*, 735 F.2d 1095, 1097 (8th Cir. 1984).

While the Court recognizes that the term 'immediate control' is not narrowly defined, the Court is not persuaded that the cases of *Morales* or *Belton* are controlling in the case at bar. *See e.g. Morales*, ("Subsequent decisions of the Supreme Court and this court have interpreted the phrase 'immediate control' to extend beyond the area that is conveniently or easily accessible to the arrestee."). In *Morales*, the search incident to arrest involved the search of the arrestee's luggage at St. Paul's International Airport, *Morales*, 923 F.2d at 621, and the search at issue in *Belton*, was that of the passenger compartment of an automobile, 453 U.S. 454 (1981). The Supreme Court has traditionally given a higher degree of protection to residences, on the basis that an individual has a higher expectation of privacy in a residence, than an automobile, or in his luggage. *See e.g. United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976) ("[O]ne's

expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence."). Residences are "ordinarily afforded the most stringent Fourth Amendment protection." *Id.*

A review of Eighth Circuit case law shows that the facts of the specific case are significant in determining whether a search was lawful as incident to a valid arrest. These facts include whether the arrestee was handcuffed, or detained, at the time of the search. *See e.g. Palumbo*, 735 F.2d at 1097 ("Detective Zambo's testimony at the suppression hearing indicates that Palumbo was not handcuffed when the officers retrieved the cocaine from behind the drawer within an arm's reach from where Palumbo sat."); *See also United States v. Miller*, 946 F.2d 1344, 1346 (8th Cir. 1991). In *Miller*, a case involving the search of a hotel room, the Eighth Circuit upheld the seizure of a firearm from a nightstand, based on the district court's specific factual findings "that Miller was only four to four and one-half feet from the nightstand and bed, and that Miller, who is six feet tall, could have reached the gun and cocaine from where he stood." *Miller*, 946 F.2d at 1346. The Eighth Circuit opinion in *Miller*, cites to *Palumbo*, for the proposition that "officers were justified in looking behind drawer of dresser which was in arm's reach of unhandcuffed defendant . . . ." *Id.*[5] Another notable fact is when the search occurred, relative to the arrest. *See e.g. U.S. v. Hill*, 730 F.2d 1163, 1167 (1984). In *Hill*, the Eighth Circuit expressed concern regarding the timing of the search. *Id.* "The Supreme Court has

---

[5]The Court recognizes that in an earlier opinion the Eighth Circuit cites *Palumbo* for the proposition that a search of "an area behind a dresser drawer while the arrestee stood handcuffed in the same room[,]" was permissible. *Morales*, 923 F.2d 626. These appear to be inconsistent readings of *Palumbo*. Reviewing the *Palumbo* decision, the Court notes that the Eighth Circuit did not find credible the Defendant's assertion that he was handcuffed at the time of the arrest. *Palumbo*, 735 F.2d at 1097 ("Palumbo argues that the cocaine, hidden behind a dresser drawer, was inaccessible to him because he was handcuffed and in the presence of several officers. The record does not unequivocally support this assertion.").

4

clearly stated, '[W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the [search is remote in terms of time or distance from the arrest] . . . , or no exigency exists.'" *Id.* (citing *United States v. Chadwick*, 433 U.S. 1, 15 (1977)) (alterations in original).

The factual findings by the Magistrate Judge show that the officers were concerned that the Defendant might be arming himself, and therefore they broke the door to the hotel and entered with weapons drawn. However, when the officers entered the room, the Defendant was standing approximately six feet from them in the hallway entrance to the room, and immediately raised his hands in the air, at which time the officers took hold of the Defendant, forced him to the floor and handcuffed him, without any resistance from the Defendant. The Court finds significant the amount of time that had passed from Defendant being restrained, and the search. One officer had read the Defendant his *Miranda* rights and asked the Defendant if he understood those rights, before the search took place. The separation between the time of the arrest and the time of the search tends to negate the justification for a search incident to arrest, namely the protection of the officers, and the prevention of the destruction of evidence. Additionally, the Magistrate Judge found that the clothing in question was located on the bed farthest from the Defendant, approximately ten to twelve feet from where the Defendant was being held by the police officer. Notwithstanding the Eighth Circuit's broad interpretation of the "immediate control" language, the Court does not believe that the jacket was within the Defendant's immediate control, when he his hands were restrained with handcuffs locked behind his back, when he was on the floor, under an officer, ten to twelve feet from where the jacket was located. Unlike the cases above, the Defendant was not in a close proximity to the area searched. The Court concludes, based on the

facts of the case at bar, that the search of Defendant's jacket was not a lawful search incident to arrest.

### B. Exigent Circumstances

The Court must next consider whether the search of Defendant's jacket was reasonable, on the basis that the officer was getting the jacket in order to provide it to the Defendant, who was wearing only his boxer shorts, to protect the Defendant from the cold January weather. It is not disputed, that the Defendant did not request the jacket, but rather that the officer acted of his own volition. It is important to note that while this was the officer's intent in picking up and searching the jacket, the Defendant was ultimately transported wearing only his boxer shorts. The question the Court must answer is whether the need to provide clothing for the arrestee constitutes an exigent circumstance.

There are a number of circuit court opinions which address the question of providing an arrestee with clothing before being transported, and the admissibility of evidence found while retrieving the arrestee's clothes. The Second Circuit, in *United States v. Di Stefano*, found that "[t]he officers had a duty to find clothing for Sally [defendant] to wear or to permit her to do so." 555 F.2d 1094, 1101 (2nd Cir. 1977). The *DiStefano* court went on to hold that the seizure of evidence found in the defendant's closet was lawful, as it was in plain sight once the defendant had opened the closet door in order to dress herself. *Id.* The Tenth Circuit reached a similar result in *United States v. Butler*, finding that guns seized from defendant's residence were lawfully admitted into evidence, as the officers acted out of concern for the defendant in taking him into the residence to obtain shoes. 980 F.2d 619, 622 (10th Cir. 1992).[6] The Fourth Circuit also

---

[6]However, the Tenth Circuit reached a contrary result in *United States v. Atherton*, on the basis that taking the defendant into the hotel room to dress was not required to protect his health or safety. 648 F.2d 669, 675 (10th Cir. 1981). The Tenth Circuit harmonized its holdings in

6

upheld the seizure of a firearm, located by officer's who had entered the arrestee's house to obtain boots and a shirt for the arrestee. In *United States v. Gwinn*, 219 F.3d 326, 333 (4th Cir. 2000), the court specifically stated that "an officer is authorized to take reasonable steps to address the safety of the arrestee and that the arrestee's partially clothed status may constitute an exigency justifying the officer's temporary reentry into the arrestee's home to retrieve clothes reasonably calculated to lessen the risk of injury to the defendant." *Id.* The Fifth Circuit provided a thorough analysis of the issue, and held that "the potential of a personal safety hazard to the arrestee places a duty on law enforcement officers to obtain appropriate clothing." *United States v. Wilson*, 306 F.3d 231, 241 (5th Cir. 2002); *see also United States v. Clay*, 408 F.3d 214, 218 (5th Cir. 2005) (reaching same result in case of a parolee).[7]

The Court agrees with the majority of the Circuit Courts, that an officer may enter an arrestee's residence, or a specific room of that residence, in order to locate clothing for an arrestee, where such clothing is required for the defendant's health or safety. The Court further agrees that any evidence that is located while retrieving an arrestee's clothing is admissible under the plain view doctrine. *See e.g. U.S. v. Radaj*, 390 F.Supp.2d 395, 402 (S.D.N.Y. 2005) (Allowing the admission of evidence discovered in plain view in defendant's bedroom, after

---

*Atherton* and *Butler* by looking at whether the action was required to protect the health and safety of an arrestee. *Id.* ("What separates the present case from the impermissible seizure in *Atherton* is the presence of a legitimate and significant threat to the health and safety of the arrestee.").

[7]Contrary to the majority of circuits, the Sixth Circuit, with little analysis, held in *United States v. Kinney*, that the fact that Defendant was not fully clothed did not constitute an exigent circumstance, sufficient to permit the officers to enter the residence and retrieve additional clothing. 638 F.2d 941, 945 (6th Cir. 1981) ("Judge Kennedy's suggestion that 'March' weather justified taking the defendant back into his house is not supported by the record."). However, it is not clear that the Sixth Circuit would reach the same result if the record supported a finding that the clothing was required for the health or safety of the arrestee; the issue was not discussed in *Kinney*.

entering the bedroom to obtain clothing for the defendant who was wearing only his underwear and a t-shirt.). Going a step beyond those cases cited above, the Court further finds that if the clothing was required to protect the Defendant's health and safety, then the officers were reasonable in searching the jacket prior to giving it to the Defendant.[8] *See Terry v. Ohio*, 392 U.S. 1, 19-20 (1968) ("[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one-whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."). The need to search an article of clothing prior to presenting it to an arrestee to wear, is analogous to the need to pat down an individual prior to questioning the individual regarding criminal activity. *Id*. at 24 ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and neutralize the threat of physical harm."). The Supreme Court has repeatedly provided for searches that are required to protect the safety of police officers, and therefore, the search of the jacket before giving it to the Defendant was clearly reasonable.

The one question that remains in the case at bar, is whether the clothing was required in order to protect the health and safety of the arrestee.[9] Whether the clothing was required is put into question by the clear factual finding that the Defendant was escorted to the police station

---

[8]Unlike the cases cited above, the evidence seized by the officers in the case at bar was not in plain view, and therefore is not admissible on that basis.

[9]The Defendant's attorney makes a powerful observation, stating that "[t]he fact of the matter is that Mr. James left the hotel in his underwear, unclothed, and whatever additional power to invade privacy is given to the authorities based on an exception for the well-being of the arrestee, it should not be held to apply when in fact the arrestee's well-being was not protected." *Def. Objections to Report and Recommendation*, p. 6.

8

wearing only his underwear. However, the officers testified at the suppression hearing that due to the gun, and white powder found in Defendant's jacket, they were concerned that there might have been undiscovered contraband in the clothes. Based on this concern, the officers did not provide any clothing to the Defendant before transportation. Although the Court recognizes the concern that officer's will use the requirement to provide clothing to an arrestee as an excuse to conduct a further search of the arrestee's clothing or residence, the Court will not second guess the intentions of the officers. The unrefuted testimony is that the officers saw the clothing across the room, and determined that it would be prudent for the Defendant to dress before being transported. While the subsequent events changed this determination, those events do not serve to negate the legality of the original seizure nor of the subsequent search. As the Supreme Court held in *Terry*, whether a search was reasonable requires the Court to determine whether "the officers action was justified at its inception." 312 U.S. at 19-20. When the officer retrieved the jacket his actions were justified, as he was acting out of a desire to provide the Defendant with clothes. Therefore, the Court concludes that the search of Defendant's jacket was lawful.

### III. CONCLUSION

The Court upholds the finding of the Magistrate Judge's report and recommendation, however, on a different basis than that found by the Magistrate. The Magistrate Judge's findings that the distance between the Defendant and the clothing was at least ten feet, and the fact that the Defendant was handcuffed on the floor and restrained by an officer at the time of the search, all mitigate against holding that the search was a lawful search incident to arrest. However, the fact that Defendant was not wearing any clothes at the time of the arrest, provided an exigent circumstance sufficient to support the seizure and search of Defendant's jacket.

Accordingly,

9

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence [doc. #19] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements, Admissions and Answers [doc. #20] is **DENIED**.

Dated this 4th Day of October, 2007.

*E. Richard Webber*
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE